IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANIEL REED, | ) |
| | ) CASE NO. 5:18-cv-2386 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| VILLAGE OF WILMOT, *et al.*, | ) KATHLEEN B. BURKE |
| | ) |
| Defendants. | ) |
| | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |

Under Ohio Revised Code § 737.17, a village police chief is required to serve a probationary period of six months before either being removed or finally appointed. Six months and five days after Plaintiff Daniel Reed ("Reed" or "Plaintiff") was appointed Police Chief of the Village of Wilmot ("Village"), the Village's Council, on the recommendation of the Mayor, voted to terminate him. Reed brings federal and state law claims against the Village, the Mayor, the Council members, and the Village Clerk and Treasurer (collectively, "Defendants"). Reed's federal claims, Counts 1 and 2 of his Amended Complaint, are for violation of his due process rights and for First Amendment retaliation, respectively. His state law claims, Counts 3 and 4, are for wrongful termination and defamation.

Both sides have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff's Motion (Doc. 33) seeks partial summary judgment limited to his due process claim.[1] Defendants filed two Motions for Summary Judgment, one directed to Reed's federal claims (Doc. 34) and

---

[1] Defendants' Opposition to Plaintiff's Motion is Doc. 39 and Plaintiff's Reply is Doc. 40.

one directed to his state law claims (Doc. 35).[2] The parties agree that Reed's procedural due process claim requires him to establish that he had a property interest in his employment as police chief. Reed asserts that he had "a continued expectation of employment" sufficient to support his due process claim. Doc. 33, p. 6. Defendants argue that Reed had no property interest in his employment because his status as police chief was probationary by statute.

After review, the Court, for the reasons more fully set forth below, GRANTS Defendants' Motion for Summary Judgment on Reed's federal claims and DENIES Reed's Motion for Summary Judgment. The Court concludes that Reed's due process claim is governed by Revised Code § 737.17 and by *Curby v. Archon*, 216 F.3d 549 (6th Cir. 2000). In *Curby*, the Court of Appeals, relying on § 737.17, held that a village police officer who was removed almost two weeks after the end of the six-month probationary period was a probationary employee and therefore had no property interest in his employment and no right to a hearing. Based on *Curby* and § 737.17, Reed cannot show that he had a property interest in his employment as Police Chief and his due process claim fails. Reed has not provided any evidence or argument regarding his First Amendment retaliation claim, thus requiring that judgment be entered against him on that claim. The Court declines to exercise supplemental jurisdiction over Reed's state law claims, dismisses them without prejudice, and denies Defendants' Motion respecting them as moot.

## I. Background

### A. Relevant Facts

Reed began working for the Village as a patrolman on March 1, 2011. Doc. 33-1, p. 1,

---

[2] Plaintiff's Opposition to Defendants' motion on the federal claims is Doc. 38 and Defendants' reply is Doc. 41. Plaintiff's Opposition to Defendants' motion on the state law claims is Doc. 37 and Defendants' reply is Doc. 42.

¶2(a). During his employment, he was promoted to sergeant and captain.[3] Doc. 33-1, p. 1, ¶2(c)(d). He alleges that, upon being appointed to those posts, he was never notified that he was on probation. Doc. 33-1, p. 1, ¶2(b)-(d).

On February 22, 2016, recently elected Village Mayor Bobby Pulley ("Mayor" or "Pulley") appointed Reed Acting Police Chief due to the former chief's legal incapacity to perform that role. Doc. 33-1, p. 5; Doc. 31, pp. 12-13. On May 2, 2016, the Village Council approved Reed's appointment as Police Chief. Doc. 31-1, p. 15; Doc. 33-1, p. 8.

Ohio Revised Code § 737.17 provides that the appointment of a police chief "shall be for a probationary period of six months . . . ." Reed alleges that, upon being appointed Police Chief, he was not notified that he must serve a probationary period. Doc. 33-1, p. 1, ¶2(e).

Reed's six-month probationary period ended on November 2, 2016.[4] On October 21, 2016, Pulley notified Reed in writing that he was being placed on administrative leave pending a public hearing of Pulley's complaint against Reed at the November 7th regularly scheduled Council meeting. Doc. 33-1, pp. 9; Doc. 30-1, pp. 31-32. At the same time, Pulley gave Reed a copy of his letter to Council dated October 21, 2016, recommending that Reed be terminated and setting forth a list of ten charges. Doc. 33-1, pp. 10-11; Doc. 30-1, pp. 31-32. The list of charges in the letter related to Reed's actions regarding the Village's police cruisers, employee files and police records, Village equipment, Reed's attendance at meetings and at the police station, and statements he had made about his retirement. Doc. 33-1, p. 11.

Pulley's letter to Council referenced Reed's insubordination. It did not cite R.C. 737.17.

---

[3] Reed does not recall when he was promoted. Doc. 30-1, p. 11.

[4] The parties agree that Reed was appointed Police Chief on May 2, 2016, when Council approved the appointment. See Doc. 20, p. 4, ¶8 (Amended Complaint); Doc. 31-1, pp. 14-15 (Reed's deposition). Six months from May 2, 2016, was November 2, 2016.

3

Rather, it cited R.C. 737.171, "Suspension or removal of marshal," as authority for Reed's removal. Doc. 33-1, pp. 10-11. R.C. 737.171 sets forth the process for removing a "duly appointed" police chief to include the following:

> The person against whom th[e] charges are filed may appear in person and by counsel at the hearing, examine all witnesses, and answer all charges against that person.

On November 7, 2016, the Village Council held its regular session meeting. Reed was present and expressed an interest in resigning effective December 1. Doc. 33-1, p. 12. After discussion, the Council voted that Reed should either resign immediately or Council would have a hearing on the issue of his removal that evening. Doc. 33-1, p. 13. Reed agreed to a hearing that evening. Doc. 33-1, p. 13. In his affidavit, Reed states, "I agreed to a hearing with the understanding that it would be a proper hearing according to R.C. 737.171 as cited in [Mayor] Pulley's letters." Doc. 33-1, p. 2, ¶2(i).

The hearing began. Mayor Pulley was sworn in by the village solicitor and was asked to review the charges against Reed that he had listed in his October 21 letter and to comment. Doc. 33-1, p. 13. Pulley read the ten charges and commented. Doc. 33-1, pp. 13-14. The Village solicitor then swore in Reed. Doc. 33-1, p. 14. Reed denied the ten charges and asserted that each charge contained incomplete facts and/or were untrue. Doc. 33-1, p. 14; Doc. 31, p. 47. He commented on all ten charges. Doc. 33-1, p. 14; Doc. 31, p. 47.

An individual named Mary Arnold asked to speak. Doc. 33-1, p. 14. Pulley denied her request. Doc. 33-1, p. 14. Reed asked that Arnold be permitted to testify. Doc. 33-1, p. 14. Pulley denied Reed's request, stating that Arnold was not a resident of the Village and she was "not a part of the texts or conversation." Doc. 33-1, p. 14.

Thereafter, the Village Council entered into executive session (without Mayor Pulley)

and voted unanimously to terminate Reed, effective immediately. Doc. 33-1, p. 14.

## B. Legal Proceedings

After his termination, in November 2016, Reed filed an administrative appeal in the Stark County, Ohio, Court of Common Pleas, seeking to stay his termination and to be reinstated. *See Daniel Reed v. Village of Wilmot, et al.*, Case No. 2016-cv-02512.[5] In a Judgment Entry filed on January 19, 2017, after a hearing on Reed's motion for stay, Common Pleas Court Judge Frank Forchione denied a stay. The court stated that it could not reinstate Reed because the Village no longer had a police force, having disbanded it and contracted with the Beach City Police Department for police services.[6] Judgment Entry, p. 1. In dictum, the Court went on to describe friction among the Mayor, the Council, and Reed, saying that Reed had "contributed to some of the acrimony by his own actions." Judgment Entry, p. 2. Reed relies on the state court's additional statement in dictum that "the mechanism used to remove Plaintiff was flawed and may have violated statutory provisions and simple Constitutional principles." Doc. 33, p. 8; Judgment Entry, pp. 2-3.

In October 2018, Reed filed this lawsuit against the Village, Mayor Pulley, seven Council members, and the Village Clerk and Treasurer. Docs. 1, 20.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[5] Although Reed refers to this case in his motion papers (Doc. 38, p. 10), he did not include the state court's Judgment Entry that he relies on. The Court obtained a copy of the Judgment Entry after ordering Reed's counsel to provide it. See Doc. 9 (Minutes of 11/5/18 telephone conference). The Judgement Entry is also available on the Stark County, Ohio, public docket (https://www.starkcountyohio.gov/clerk, last visited 9/30/2019).

[6] The Court noted that the safety of the Village appeared to be well served by the Beach City arrangement. Id.

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant "bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Id.* at 587 (internal quotations and citations omitted). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. The non-moving party must present specific facts that demonstrate there is a genuine issue of material fact for trial. *Id.* at 587. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue for trial exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Muncie Power Producers, Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). Thus, for a plaintiff to avoid summary judgment, "there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Accordingly, in determining whether summary judgment is warranted, a judge generally asks "whether there is evidence upon

which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* (citation omitted).

### III. Analysis

**A. Count 1: Due Process Claim, 42 U.S.C. § 1983**

In Count 1 of his Amended Complaint, Reed alleges a procedural due process claim under 42 U.S.C. § 1983. Doc. 20, p. 7. He alleges that Defendants deprived him of his constitutional rights to confront witnesses against him and to "a just hearing." Doc. 20, p. 7, ¶¶ 43-44.

The Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. When considering a procedural due process claim, a court first asks whether a state actor has interfered with a life, liberty, or property interest of the plaintiff and, if so, whether the procedures attendant upon that deprivation were constitutionally sufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972) and *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). Thus, this Court must first consider whether Reed had a property interest in his position as police chief. *Curby v. Archon*, 216 F.3d 549, 553 (6th Cir. 2000)).

A property interest is created, and its dimensions defined, "by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. at 577; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Curby*, 216 F.3d at 553. R.C. § 737.17, the statute under which governs Reed's appointment as police chief, provides,

> All appointments made under sections 737.15 and 737.16 of the Revised Code[7] shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such employee's service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee.

*Id*. In short, a police chief must satisfactorily complete the six-month probationary period before being either removed or finally appointed. *Id.*; *Curby*, 216 F.3d at 553.

Defendants argue that Reed did not have a property interest in his employment because he did not satisfactorily complete his six-month probationary period and he was never finally appointed as required by R.C. 737.17. Doc. 34, pp. 6-8 (collecting cases); Doc. 39, pp. 2-3. Reed argues that R.C. 737.171, the statute cited by the Mayor in his letter to counsel, governs his termination, not R.C. 737.17, and, even if R.C. 737.17 governs, he nevertheless acquired a property interest in his employment. Doc. 38, pp. 4-8.

### 1. R.C. 737.171 does not govern Reed's employment

Reed does not appear to dispute that R.C. 737.17 by its terms governs the appointment of a village police chief. In other words, he does not dispute that, pursuant to that statute, a village police chief is required to serve a six-month probationary period and that, after satisfactorily serving this period, the police chief may be removed or finally appointed by an act of the mayor and the village legislative body.

Rather, Reed's argument is that Defendants "acted under the color of R.C. 737.171" when they terminated him, making 737.171, not 737.17, the statute that governs his termination.

---

[7] Section 737.17 provides that it applies to "[a]ll appointments under sections 737.15 and 737.16 . . . ." A village police chief is appointed pursuant to R.C. 737.15, which provides that each village shall have a "marshal, designated chief of police, appointed by the mayor with the advice and consent of the legislative authority of the village." Section 737.16 provides for the appointment of deputy police chiefs and police officers.

8

Doc. 38, p. 5-6. In support, Reed references the letter Mayor Pulley wrote to Village Council recommending that Reed be removed from office, which cited R.C. 737.171. Doc. 33-1, p. 10.

R.C. 737.171, "Suspension or removal of marshal," provides:

> [I]f the mayor of a village has reason to believe that a <u>duly appointed marshal</u> of the village has been guilty of incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance in the performance of the marshal's official duty, the mayor shall file with the legislative authority of the village written charges against that person setting forth in detail the reason for the charges and immediately shall serve a true copy of the charges upon the person against whom they are made….The person against whom those charges are filed may appear in person and by counsel at the hearing, examine all witnesses, and answer all charges against that person.

*Id*. (emphasis supplied).

Reed's contention that R.C. 737.171 controls fails. R.C. 737.171, by its plain language, applies to "duly appointed marshal[s]." But Reed had not been "duly appointed." He was still serving his probationary period when Mayor Pulley presented him with the letter placing him on administrative leave and notifying him that Pulley would recommend he be terminated. Shortly thereafter, at the next scheduled council meeting, Reed was terminated. He was never finally appointed. Because he was never "duly appointed," 737.171 does not govern the circumstances of his employment. *See, e.g., Prather v. Village of New Straitsville*, 1981 WL 2950, at * 1 (Oh. Ct. App. Feb. 19, 1981) (a probationary police chief who had not attained a final appointment per 737.17 is not "duly appointed" per 737.171).

The fact that Mayor Pulley mistakenly cited 737.171 in his letter to the Village Council does not bestow upon Reed a property interest in his employment that is contrary to his probationary status under R.C. 737.17. A property interest is created by state law. *See Board of Regents v. Roth*, 408 U.S. at 577 ("Property interests … are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state

law..."). Under Ohio law, Reed was required to satisfactorily serve a six-month probationary period upon his initial appointment as police chief before being eligible for final appointment. He did not satisfactorily serve a six-month probationary period and he was never finally appointed. Reed does not cite legal authority that holds that a village mayor can intentionally or unintentionally circumvent Ohio law to create a property interest where a state statute expressly negates such an interest. *C.f. Winfield Constr. Inc. v. Oakton, Inc*., 2005 WL 1423439, at * 5 (Oh. Ct. App. June 17, 2005) ("persons [dealing with municipal corporations] are not entitled to rely on actions of municipal corporations *or their agents when pertinent statutory requirements are not met*[,]" quoting *Williamsburg v. Milton*, 619 N.E.2d 492, 495 (Oh. Ct. App. 1993) (emphasis in original)).

Reed takes contradictory positions as to whether he contends that Defendants' reliance on 737.171 at the time he was terminated constitutes a waiver or estops Defendants from arguing that he was a probationary employee. In his Opposition to Defendants' Motion, Reed argues that Defendants' citation of 737.171 at the time of termination "constitutes a waiver of their current argument that R.C. 737.17 applies." Doc. 38, pp. 5-6. In his Reply in support of his own Motion, he takes the opposite tack, criticizing Defendants for raising what he calls irrelevant issues of waiver and estoppel: "Plaintiff has made no attempt to list and prove the elements of estoppel or claimed that the Village has committed any form of waiver." Doc. 40, p. 8.

To the extent Reed does claim waiver or estoppel, that claim fails. *See, e.g., Gold Coast Realty, Inc. v. Bd. of Zoning Appeals of City of Cleveland*, 268 N.E.2d 280, 281 (Ohio 1971) ("It is axiomatic that courts have historically been loathe to apply doctrines of waiver, laches or estoppel to governmental entities and arms thereof."); *Cosby v. Franklin Cty. Dep't of Job & Family Servs*., 2007-Ohio-6641, 2007 WL 4340280, at *8 (Oh. Ct. App. Dec. 13, 2007) ("The

principles of waiver, laches and estoppel ordinarily do not apply against the state or its agencies."); *Campbell v. Campbell*, 621 N.E.2d 853, 854 (Ohio Ct. App. 1993)("Waiver is a concept which applies to an individual who freely waives his own rights and privileges. The public interest may not be waived.") (internal citations omitted). For the same reasons, Reed's complaint that the Village never finally appointed him at any time during his six-year employment with the Village (as a patrol officer, a sergeant, and a captain), which implicates the doctrine of laches, also fails. *See id*.

Finally, Reed's reliance upon the Stark County Court of Common Pleas Judgment Entry in his state court case (Doc. 33, p. 8), is unavailing. The state court found that Reed's requested remedy— reinstatement— was not possible because the Village no longer had a police department. The state court's observation that the mechanism used by the Village to remove Reed was "flawed and may have violated statutory provisions and simple Constitutional principles" was dicta. It was also based on the Village's purported lack of compliance with R.C. 737.171 but, as detailed above, 737.171 does not govern Reed's employment.[8]

### 2. Under R.C. 737.17, Reed did not have a property interest in his employment

To avoid the requirement that he must have been finally appointed after satisfactorily serving a six-month probationary period to enjoy a property interest in his employment, Reed argues that the Village's five-day delay in terminating him after his probationary period ended gave rise to a property interest. Doc. 38, p. 6. There are two problems with this argument. First, R.C. 737.17 by its terms contemplates that a decision by a mayor and village council to finally

---

[8] Moreover, non-compliance with R.C. 737.171 does not equate to a federal constitutional violation. *See Cvarovsky v. Village of Newburgh Heights*, 2010 WL 3895064, at *6 (N.D.Ohio Oct. 1, 2010) ("The question, therefore, is not whether or not the Ohio statute [R.C. 737.171] was followed, but whether the minimum federal requirements for due process were provided and/or available in connection with Mr. Cvarovsky's termination.").

appoint or terminate may not occur simultaneously with the end of the six-month probationary period when it states:

> [No appointment] shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to [Council] a record of such employee's service with his recommendations thereon and he may, with the concurrence of the [Council], remove or finally appoint the employee.

Second, the argument made by Reed here was rejected by the Sixth Circuit in *Curby*, 216 F.3d 549:

> Curby . . . argues that because he was not removed until the 194th day of full-time employment, which was after his six-month probationary period had passed, he automatically acquired a property interest in continued employment. This argument lacks merit because, as noted above, "a probationary employee who completes a probationary term but is not finally appointed has no reasonable expectation of continued employment." *Matulin*, 862 F.2d at 616 (citation omitted); *Dillingham v. Village of Woodlawn*, 86 Ohio App.3d 54, 619 N.E.2d 1152, 1155 (1993) ("Our holding necessarily means that a police employee's probationary status does not automatically terminate at the end of the six-month period, but, rather, continues until the mayor and council concur on either removing or finally appointing him."); *Walton*, 430 N.E.2d at 932 ("Since the probationary period is for the benefit of the appointing authority to aid in the determination of merit and fitness for civil service employment, the General Assembly historically has provided ... leeway in the dismissal of probationary employees."); *Monroe v. Smith*, No. CA84–08–050, 1985 WL 8152 *2 (Ohio Ct.App. Jan. 28, 1985) ("By continuing his employment for more than two months [after his probationary period had ended], Patrolman Monroe contends that the inaction ... induced him into believing he had become a permanent employee. Mere delay without any special injury therefrom does not give rise to an estoppel."). Because Curby was not appointed, he never obtained a property interest in continued employment as a deputy marshal.

*Id*.

Reed relies on a vacated opinion in *Murphy v. Village of Commercial Point*, 2017 WL 6508578 (S.D.Ohio Sept. 29, 2017), in support of his position that the purported delay in terminating him created a property interest. Doc. 38, pp. 4-6. In *Murphy*, the court found that the village's unreasonable delay—between 2-7 years—in terminating a police officer after his probationary period ended gave rise to a property interest in the officer's continued employment.

12

*Id*. at 14-15. *Murphy* is not persuasive because the district court later vacated its opinion. *Murphy*, 2018 WL 3019128 (March 31, 2018). Reed suggests that, because the district court vacated its opinion after urging the parties to explore settlement options and the parties thereafter did settle the case, the vacated opinion is "still persuasive." Doc. 38, p. 4. However, the court did not explain why it vacated its order; Reed is merely guessing. The Court will not speculate as to why the court in *Murphy* vacated its prior order. The fact remains that the opinion has been vacated; it has very little persuasive value as a result.

Moreover, the facts in *Murphy* are very different than the facts in this case. The plaintiff in *Murphy* was appointed as a probationary employee as early as September 2006 and no later than July 2011 and he (apparently) satisfactorily served his six-month probationary period;[9] he was terminated in April 2014. 2017 WL 6508578, at *14. Thus, he was terminated 2-7 years after his six-month probationary period expired. *Id*. Here, Reed did not satisfactorily serve his six-month probationary period and he was terminated 5 days after his probationary period was set to expire. The *Murphy* court cited with approval two cases in which courts found that the delay in termination did not create a property interest and both cases involved a longer delay than the five days Reed experienced: *Monroe v. Smith*, 1985 WL 8152, at *2 (Ohio Ct. App. Jan. 28, 1985) (79 days) and *Curby*, 216 F.3d 554 (12 days). *Id*. In short, the facts in this case are much more similar to the facts in *Curby* than to the facts in *Monroe*. Thus, rather than helping Reed's case, the opinion in *Murphy* hurts it.

In an effort to create a longer delay between the end of his probationary period and his termination, Reed asserts that he actually had only one probationary period: when he was first

---

[9] The 2- to 7-year discrepancy stemmed from the court's finding that there was a factual dispute regarding whether the plaintiff's first appointment was as an auxiliary officer, who does not serve a probationary period, or as a probationary officer. *Murphy*, 2017 WL 6508578, at *14, n. 4.

13

hired as a patrol officer in 2011. Doc. 38, pp. 5, 6. In other words, he claims that his promotion to police chief did not start a new probationary period. He cites no legal authority for his assertion that his promotion to police chief did not start a new probationary period and legal authority indicates otherwise. *See* R.C. 737.71 ("All appointments made under sections 737.15 and 737.16 of the Revised Code shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period."); 737.15 "Appointment of village marshal[]" ("Each village shall have a marshal, designated chief of police, appointed by the mayor with the advice and consent of the legislative authority of the village...").

Reed's other arguments are also unavailing. He contends that he was never notified that he had to serve a six-month probationary period upon his appointment as police chief (Doc. 38, p. 5; Doc. 33, p. 7), but the statute does not require notification. Moreover, as the court in *Curby* observed, "'the probationary period is for the benefit of the appointing authority,' not for the benefit of the probationary employee." 216 F.3d at 554 (internal citation omitted). In other words, Reed's lack of awareness that he had to serve a six-month probationary period before he could be finally appointed to his position does not give rise to a property interest in his employment. *See also Winfield Constr.*, 2005 WL 1423439, at * 5 ("It has long been the law of Ohio that persons dealing with municipal corporations are charged with notice of all statutory limitations on the power of such corporations and their agents, and must, at their peril, ascertain whether all necessary statutory formalities have been met[,]" quoting *Kimbrell v. Seven Mile*, 469 N.E.2d 954, 957 (Ohio Ct. App. 1984)).

Reed has one more argument. He contends: "an at-will employee can still establish a property interest in continued employment if the employee 'had a reasonable expectation that

14

termination would be only for good cause'" and, further, that Defendants "allowed [him] to believe that he was a regular employee with a continued expectation of employment." Doc. 33, p. 6; Doc. 40, p. 3 (quoting *Pate v. Wallace*, 188 F.3d 508, at *5-6 (6th Cir. 1999)). While true in some circumstances that an at-will employee may establish a property interest in continued employment if the employee had a reasonable expectation that termination would only be for good cause, Reed has not shown that his circumstances fall under any exception or that he had a reasonable expectation of continued employment. Rather, his circumstances were that he was statutorily required to serve a successful, six-month probationary period and be finally appointed and he did not meet either requirement. He has submitted no evidence of a mutually expressed understanding on his part and the part of the Village that he would be terminated only for good cause. *See Walton v. Montgomery County Welfare Dep't*, 430 N.E.2d 930, 935 (Ohio 1982) (rejecting the plaintiff's argument she had an expectation of continued employment, observing that the Ohio statute provided that she must serve a probationary period and be finally appointed, which she was not, and finding that she had not shown "any evidence of 'rules or mutually explicit understandings' to support her claim [of an expectation of continued employment[,]" (citing *Perry v. Sindermann*, 408 U.S. 593 (1972)).

Reed asserts that the Village "allowed [him] to believe that he was a regular employee with a continued expectation of employment" because he was not notified that he had to serve a probationary period (Doc. 33, p. 6), but, again, this does not rise to the level of a reasonable expectation. Instead, it evinces a unilateral expectation, which does not suffice. *See Bd. of Regents v. Roth*, 408 U.S. at 576 (to have a property interest, an employee "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."); *Curby*, 216 F.3d at 553-554 (rejecting a police chief's argument that he had a reasonable

15

expectation of continued employment, explaining that, after the police chief's probationary period ended, the village did not finally appoint him); *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989) ("a public employee does not have a property interest in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause[,] citing generally *Bishop v. Wood*, 426 U.S. 341 (1976) and *Lake Mich. Coll. Fed'n of Teachers v. Lake Mich. Cmty. Coll.*, 518 F.2d 1091 (6th Cir. 1975)).

Reed's other bases for claiming that his expectation of continued employment was reasonable— he had not been disciplined during his probationary period and the Village had a long-standing custom of never notifying employees of their probationary status or finalizing their appointments (Doc. 38, pp. 6-7)— likewise fail. *See State ex rel. Trimble v. State Bd. of Cosmetology*, 364 N.E.2d 247, 249-250 (Ohio 1977) (employee was an at-will employee per Ohio Revised Code; her classification as a permanent employee and her favorable work evaluation did not create a reasonable expectation of continued employment that gave rise to a property interest); *Carr v. Bd. of Trustees of Univ. of Akron*, 465 F.Supp. 866, 901 (N.D.Ohio 1979) (the fact that the university had a custom of employing professors for five years before it made a tenure decision did not create a reasonable expectation on the part of the plaintiff that he would be employed for five years before a tenure decision, but was "only a mere unilateral or subjective expectation of continued []employment" that did not create a property interest). In short, Reed has not cited a case holding that an employee mandated by state law to serve a probationary period and be finally appointed (but who was not) nevertheless gained a property interest in his or her employment due to a reasonable expectation of continued employment.[10]

---

[10] Indeed, the only two cases Reed relies on in support of his argument (Doc. 40, p. 3) ruled *against* the plaintiffs,

16

As noted above, Reed's allegations in this case do not suffice.

While he admits his Amended Complaint does not expressly plead a claim under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978), Reed nevertheless asserts he has "implicitly" pled such a claim, which he contends is supported by the fact that the Village had a custom of failing to notify employees of their probationary status. Doc. 38, p. 12. To the extent Reed's Amended Complaint could generously be construed in the manner he suggests, his *Monell* claim fails due to his lack of a property interest in his employment. *See Monell,* 436 U.S. at 694-695 (1978) (a constitutional violation is a required element of a § 1983 *Monell* claim).

The Court therefore grants Defendants' motion for summary judgment on Count 1 and denies Plaintiff's motion for summary judgment on that count.[11]

### B. Count 2: First Amendment Retaliation Claim

In Count 2 of his Amended Complaint, Reed alleges that his "action, including his vocal opposition to Defendants' actions including the improper conduct and procedures occurring in the police department, constituted free speech under the United States Constitution" and that Defendants terminated him in retaliation for exercising that right. Doc. 20, p. 8, ¶¶ 49-50. In their Motion, Defendants argue that Reed's speech was not entitled to First Amendment

---

rejecting their assertions that language in an employment manual gave rise to an expectation of continued employment. *See Pate*, 188 F.3d 508, at *5-6; *Gregory v. Hunt*, 24 F.3d 781, 787 (6th Cir. 1994). In his reply brief in support of his Motion, Reed alleges some acts that he claims caused him to have a reasonable expectation of continued employment. Doc. 40, p. 3 (referencing "[Defendants'] submission of the SF400 forms to OPOTA, and their swearing him in on May 2, 2016."). He does not explain what an "SF400" form is and he does not articulate how his swearing in on May 2, 2016, which started his probationary period, has any bearing on his argument. The Court does not consider this last-minute flurry of arguments in Reed's reply brief. *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (issues raised for the first time in a reply brief are waived).

[11] Because the Court finds that Reed did not have a property interest in his employment, it does not consider Defendants' additional arguments made in support of their Motion. See Doc. 34, pp. 8-14.

protection because he was not addressing matters of public concern and the comments related to his official duties, and he has no evidence proving that his speech caused his termination, both necessary elements of a First Amendment retaliation claim. Doc. 34, pp. 15-20. In support of their arguments, they rely on numerous cases articulating longstanding legal authority. *Id*. In his Opposition, Reed does not respond to Defendants' arguments. *In fact, he does not even mention his First Amendment claim.*

Federal Rule of Civil Procedure 56(e) states, "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (1) give an opportunity to properly support or address the fact; (2) consider the facts undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). *See also Notredan, L.L.C. v. Old Republic Exchange Facilitator Co*., 531 Fed. Appx. 567, 569 (6th Cir. July 29, 2013) ("Failure by a plaintiff to respond to a motion for summary judgment constitutes a forfeiture of the claims to which the motion is addressed."); *Shu-Lien Chang v. Sodexho, Inc*., 2011 WL 3444239, at *2 (N.D. Ohio Aug. 7, 2011) (A failure to respond "may be deemed a waiver of opposition to the motion, abandonment and/or a confession[,]" citing *Sharp v. Cleveland Metro. Sch. Dist*., 2009 WL 8805, *3 (N.D.Ohio Jan. 12, 2009)(in turn citing *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, *2 (6th Cir. 1989))); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig*., 45 F. Supp.3d 706, 711 (N.D.Ohio 2014)("if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Brooks v. Ohio Bell Tel. Co*., 2013 WL 3776673, at *4 (N.D.Ohio July 17, 2013)(holding that plaintiff's failure to address certain claims

in her opposition must be viewed as abandonment of those claims).

Here, Reed has not responded to or opposed Defendants' Motion with respect to his First Amendment retaliation claim. That claim is therefore deemed abandoned. *Id*. Accordingly, the Court grants summary judgment to Defendants on Reed's First Amendment retaliation claim.

**C. Counts 3 and 4: Reed's State Law Claims**

Reed's remaining claims (Count 3, wrongful termination, and Count 4, defamation) are state law claims over which this Court has supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). However, pursuant to 28 U.S.C. § 1367(c)(3), a district court should ordinarily decline to exercise supplemental jurisdiction over claims when the court has dismissed all claims over which it has original jurisdiction, although the decision remains discretionary. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Because Defendants are entitled to summary judgment on the federal claims in Reed's Complaint, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Reed's state law claims, therefore, are dismissed without prejudice. *See id*.

## IV. Conclusion

For the reasons explained above, the Court GRANTS Defendants' Motion for Summary Judgment on Reed's federal claims (Doc. 34) in full and DENIES Plaintiff's Motion for partial Summary Judgment (Doc. 33). The Court declines to exercise supplemental jurisdiction over Reed's state law claims; accordingly, Reed's state law claims are DISMISSED without prejudice and Defendants' Motion for Summary Judgment on those claims (Doc. 35) is DENIED as moot.

IT IS SO ORDERED.

Dated: September 30, 2019

*/s/ Kathleen B. Burke*

Kathleen B. Burke
United States Magistrate Judge